**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**DEBORAH SPICELAND,**

**Plaintiff,**

**vs.** **CASE NO. 1:08CV40-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

**Defendant.**

**_____________________________/**

# REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded for further proceedings.

## A. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on October 26, 2004, alleging a disability onset date of May 1, 2003, because of depression. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on September 5,

2006, and entered an unfavorable decision on March 14, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B. FINDINGS OF THE ALJ**

The ALJ found that the Plaintiff had a severe impairment, Major Depressive Disorder, through the date last insured, but this did not meet the listings. Further, her impairment could have been reasonably expected to produce the symptoms she complains of, but not to the level she describes. Her activities are inconsistent with the limitations she describes, medication is controlling her symptoms, and she has only been treated conservatively and non-aggressively. Her manner at the hearing was appropriate. The ALJ "adopted the treating source statement of Asa L. Godbey, Jr., dated February 9, 2005," and gave "significant weight" to Dr. Buffone, state agency psychologist. He gave little weight to Dr. Benet's assessment because "it is inconsistent with the medical evidence of record when considered in its entirety." (R. 19). His functional assessment was light exertional levels, simple, repetitive tasks, low stress work, with no contact with the public and no contact with supervisors/co-workers." (R. 19). Using the Medical-Vocational Guidelines, the ALJ found her not disabled even though she has an emotional impairment, she exhibited no concentration or memory deficits during the hearing, and "the additional limitations have little or no effect on the occupational base of unskilled, light work." (R. 21).

**C. ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in finding that prior to her date last insured (DLI)(June 30, 2004), she was capable of light work, unskilled, simple, repetitive tasks

in a low stress environment with no contact with the public, co-workers, or supervisors. In making this determination, Plaintiff argues that the ALJ ignored the medical record and the testimony of the vocational expert and used the grids to decide that the “no contact” limitations would have “little or no effect on the occupational base of unskilled work.”

Plaintiff also argues that the ALJ failed to articulate why he adopted part, but not all of Dr. Godbey’s opinion, which assessed her with serious functional limitations that precluded her from full time work. Dr. Godbey was a treating physician.

Further, the ALJ wholly failed to explain why he was not according her other treating physician, Dr. Addis, with the weight her opinion warranted, and failed to address the opinion of the consultative examiner, Dr. William Benet. All three examiners found her unable to sustain full time work in a traditional work setting. Instead, the ALJ credited a non-examining state agency physician who admitted he did not have sufficient medical evidence to give an opinion of her status prior to her DLI.

The government responds that although Plaintiff alleged disability as of May 1, 2003, her first medical record of importance was March 23, 2004, ten months later, when she had her cat’s leg amputated and was having issues of suicidal ideation and traumatic memory flashbacks. She began seeing Dr. Godbey at this time, who diagnosed her with recurrent major depressive disorder. Most of her medical evidence concerns her condition after the DLI, but the record closest to the DLI indicates she had

an active lifestyle, which was inconsistent with her reported limitations, and which supports the ALJ's less than credible evaluation of her subjective complaints.

The government argues that the difference in the wording of the "no contact" finding by the ALJ and the wording included in the hypothetical to the vocational expert of "should not work in close proximity with others" is only a difference in semantics, such that the vocational expert's response to "not in close proximity" was virtually the same as "no contact." Thus, the government argues, "the Court could find that the vocational expert's testimony supports the ALJ's decision and that the ALJ's failure to explicitly rely upon it was harmless. If, however, the Court determines that further consideration of the case as step five is warranted, Defendant requests that the Court remand for that purpose." (Doc. 13, p. 19).

**D. STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Crisis hotline notes show that Plaintiff was referred to the Crisis Center by the grief counselor at the University of Florida vet school following her cat's surgery on March 23, 2004. (R. 144-146). She talked with counselors there several times over the course of several months prior to her DLI. Notes of a conversation on June 26, 2004, indicate she was crying, suicidal, and unstable, but told the center volunteer that she stayed busy with clubs, painting, ceramics, swimming and sometimes golf. (R. R. 116). She was going blueberry picking that night. (R. 116). A few days later she reported that she was going to a singing group. (R. 115).

In November 2004, she was in Dr. Asa Godbey's office and he stated "reexacerbation of depression in 2003" with "modest improvement." (R. 106). His prognosis was guarded for full remission, "restricted social/interpersonal activities," and "not been able to sustain gainful employment since 1996...." (R. 106).

Crisis Center calls resumed in December 2004, and notes indicate that she was crying and afraid, but taking painting and ceramics classes. (R. 109, 110).

She also began seeing Dr. Susan Addis at this time, who stated in a report dated June 23, 2005, that she had seen Plaintiff nearly every week since December 22, 2004, and found her to be "very depressed," and "unable to be employed full time in a traditional work setting. Current GAF: 45, Past GAF: 35." (R. 107-108).

In a Mental Health Report signed by Dr. Asa Godbey on February 9, 2005, he found upon evaluation on January 18, 2005, that Plaintiff had adequate affect, thought progression, concentration, orientation, memory, and understanding. (R. 104-105). He stated that since she has not sustained employment since 1996, "implications are that a 40-hour week would be beyond her present capacities." (R. 105). Also, in a memorandum dated April 6, 2005, he states "No appreciable change when last seen on 15 March 2005." (R. 106).

In a questionnaire dated August 11, 2006, completed by Dr. Godbey, he states that she was worse in 2004 because she had not been started on any medication. (R. 150). He wrote in a letter to her attorney dated August 21, 2006, that she is not significantly improved, only modest changes, "unable to resume normal social functioning." (R. 151). In a functional assessment completed by Godbey he found her to have a GAF of 50 with a guarded prognosis for full remission from her recurrent major depression, with serious limitations in her abilities to make work decisions, complete a normal work day (with likely absences of at least two days a month), accept instruction from supervisors, and carry out detailed instructions. (R. 152-156). He also found her limited in her ability to relate with co-workers and the general public. (R. 155).

Dr. Benet wrote in a report dated January 3, 2007, (R. 158-167), that he found her to have a GAF score of 50, with mostly "marked" limitations in all areas of mental health, and unable to manage her own funds. (R. 165-168).

Dr. Gary Buffone, a non-examining state agency physician, signed, but did not complete a Psychiatric Review on Jun 29, 2005, noting “Limited MER during evaluation period to 6/04. Insufficient for DLI.” (R. 102).

**F. <u>SUMMARY OF THE ADMINISTRATIVE HEARING (September 5, 2006)</u>**

Plaintiff was 48 years old at the time of the hearing with a college degree in horticulture. (R. 197). She tries to do some pet sitting and work with the elderly, but it is sporadic. (R. 202). She could not presently hold a full time job because she has difficulty getting out of the house and is really depressed and gets upset working with other people. (R. 202). She is able to grocery shop, mow her yard, clean her house and do light cooking. (R. 206-207). She swims at a nearby apartment complex, tried to do some painting, tried to do ceramics for awhile, in an attempt to get out of her isolation and depression. (R. 210). She is in the same relationship for nine years and has been on two trips with him in the last three years to Canada and North Carolina. (R. 210). Her life has gone downhill since her divorce in 1995, (R. 213), the loss of her job in 1999, (R. 201), and then in 2003 the accident with her cat brought back childhood trauma involving her cat being killed, and everything got worse. (R. 213). She would like to work with animals, but working with the public or co-workers is a problem for her. (R. 216-217).

The hypothetical posed to the vocational expert was light exertional, limited to simple job instructions, which the expert testified precluded her past relevant work as a lab technician because it required higher functioning. However, there were a number of

other jobs which she could perform at the light and sedentary levels. (R. 220). The ALJ added that she should not work in close proximity to others, cannot function as a team, and should have no direct contact with the public. (R. 221). When he added the limitations set out in Dr. Godbey's questionnaire to a third hypothetical, the vocational expert said it would preclude all work if what he labeled as "serious limitations," were interpreted to mean "severe." (R. 222).

**G. DISCUSSION**

a) Nonexertional Impairment

At step five the Commissioner may in certain cases rely upon the grids to carry his burden of proving that there are jobs which claimant can do despite his inability to perform his past relevant work. The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of [] work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990). The term

"significantly limit basic work skills" means that the limitations "prohibit a claimant from performing 'a *wide* range' of work at a given work level." Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004). Nonexertional limitations affect a person's ability to meet the other demands of work and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. Id., at 1242, n.11.

Where use of the grids is not appropriate, and the Commissioner has not made specific findings as to the availability of particular jobs that exist in substantial numbers in the national economy which the Claimant can do despite his limitations, the proper course is for the court to remand for such factfinding. Welch v. Bowen, 854 F.2d 436, 439-440 (11th Cir. 1988).

The primary limitation expressed by Plaintiff and confirmed by her treating sources resulting from her depression concerns social interaction with others. The ALJ found her to be limited to jobs involving "no contact" with co-workers and supervisors. There are two problems with this finding; one, the finding made by the ALJ of "no contact" with co-workers or supervisors would, in the opinion of the undersigned, significantly limit the range of work available to Plaintiff such that use of the grids was not appropriate; and two, the hypothetical to the vocational expert did not include the precise finding made by the ALJ in his decision.

As Plaintiff argues in her memorandum, it is difficult to *imagine* a job that requires no contact with co-workers or a supervisor much less a *wide* range of jobs, and under

the definition above this means a vocational expert should have been used to identify these jobs. While an expert testified at the hearing, his opinion was not the basis for the ALJ's decision, and he was asked to identify jobs where she would not "work in close proximity to coworkers...cannot function as a team and no direct contact with the public. There may be some indirect contact with the public." (R. 221). This is significantly different from the finding of the ALJ that she could have no contact with co-workers and supervisors (R. 19).

Thus, the Commissioner did not carry his burden at Step Five of showing available jobs which exist that Plaintiff could do despite this limitation because it was improper to use the grids and his hypothetical to the vocational expert did not include the precise nonexertional limitation found by the ALJ.

Therefore, this cause should be remanded for use of a vocational expert to determine if jobs exist in significant numbers which Plaintiff could perform that require no contact with co-workers or supervisors.

b) Treating physician opinion

Plaintiff had several treating medical sources: Dr. Godbey, Dr. Addis, and she was seen by Dr. Benet as a consultative examination. While the ALJ adopts the opinion of Dr. Godbey, (R. 18), he did not include the limitations noted by Dr. Godbey in his findings and his use of them at the hearing in a hypothetical was not sufficiently clear as to elicit a meaningful response from the vocational expert. (See R. 222-223). While the

ALJ Is not required to adopt the entire opinion of a treating source, he must explain why he is not giving weight to the entire opinion, and he does not in this case.

Further, Dr. Addis began treating Plaintiff in December 2004, shortly after her DLI, on almost a weekly basis, and would be one of the best sources of establishing Plaintiff's condition at the time of her DLI. Her treatment notes are not in the record and should be. It is not clear whether or what attempts were made to obtain her treatment notes. While the ALJ mentions her and her findings, he does not specify what, if any, weight he gives to her opinion or otherwise explain why he does not accept her findings as a basis for his own. Dr. Addis was of the opinion in a report dated June 23, 2005, one year after her DLI, that Plaintiff was so depressed that she was unemployable with a GAF of 45, but that her previous GAF was 35.

Again, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating

physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The ALJ does not offer any explanation for rejecting in part Dr. Godbey's opinion or Dr. Addis' opinion in its entirety. He does specifically reject the opinion of Dr. Benet, the consultative examiner, but his basis for rejection, that it is "inconsistent with the medical evidence of record when considered in its entirety" (R. 19), is not supported by the record. In fact, Dr. Benet gives Plaintiff a GAF of 50, as does Dr. Godbey, which is consistent with Dr. Addis' score of 45. Although Dr. Benet and Dr. Godbey use different terminology (marked vs. seriously limited) they assess her similarly in that they find her significantly limited in her ability to concentrate, take instruction, interact with supervisors and others. In fact, Dr. Benet's assessment of marked limitations in her ability to interact with co-workers is more limited than Dr. Godbey, who found her to be limited in this regard, but satisfactory. Thus, it seems the ALJ adopted some of Dr. Benet's assessment in finding that she should work in an environment of "no contact" with supervisors or co-workers.

In short, this matter should also be remanded for the ALJ to address what weight he is affording the opinion of Dr. Addis or to provide some explanation for why he is not adopting her opinion, as well as a better reason for rejecting the opinion of Dr. Benet, if in fact, he chooses to reject his opinion since it appears that he in fact accepted some of

his findings with regard to her social interaction abilities. These findings are important since the other source of support for the ALJ's opinion, the functional assessment of Dr. Buffone, was incomplete.

Finally, the ALJ relied in large part on the notes from the Crisis Center to support his credibility finding that Plaintiff's reported daily activities were inconsistent with her alleged functional limitations. Indeed, there are inconsistencies in that Plaintiff reported at the hearing and to her treating physicians that she was uncomfortable around others and was virtually house bound, yet reported to the crisis center volunteers that she took classes, played golf, swam, and was leaving the house to pick blueberries. These volunteers and their notes should not be afforded greater weight than the opinions of the treating physicians since there is no evidence that these "volunteers" were treating sources as defined in the regulations. Acceptable medical sources are licensed physicians, psychologists, optometrists, and pediatrists. 20 CFR § 404.1513. Other sources may be used to show the severity of the impairment and how it affects the ability to work, which include nurse practitioners, physician's assistants, naturopaths, chiropractors, and therapists. 20 CFR § 404.1513. As the Court understands these records, these were notes made by trained, but otherwise non-medical volunteers who took phone calls at the center. The evidentiary value of these records is not clear. Plaintiff explained at the hearing that she attempted to do these things, take classes, swim, get out of the house, but her efforts were not working as she continued to get worse. In short, the notes made from telephone conversations with staff at the crisis

center do not outweigh the opinions of treating medical sources that Plaintiff is seriously limited in social settings by her mental impairment, and therefore do not constitute substantial evidence of a lack of credibility based on the daily activities reported therein.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED** and this cause **REMANDED** for further proceedings as recommended *supra*.

At Gainesville, Florida, this the 10th day of August, 2009.

s/Allan Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**